Millard *v.* Porter.

(1)　See *Millard* v. *Porter,* next case.

------◁◆▷------

## Millard *v.* Porter.[1]

*A* is indebted to *B*, and *C* to *A*, in equal sums, and *C* assumes to pay *A's* debt to *B*, and executes his note to him therefor, and thereupon *B* cancels his claim against *A* and receipts for the same in full. *Held*, that these facts constitute sufficient consideration for the note from *C* to *B*, and such note or any one given in renewal thereof can be enforced.

APPEAL from the *Carroll* Common Pleas.

WORDEN, J.—Suit by *Millard* against *Porter* on a note made

by the latter to the former for 880 dollars, dated *February* 13, 1856, payable twelve months from date.

The defendant answered:

*First.* That the note was given without any consideration.

*Second.* That the note was obtained by fraud and without consideration, setting out the alleged circumstances at length.

*Third.* A counter-claim. Replication in denial.

Trial by jury, verdict and judgment for the defendant, on his counter-claim, for 513 dollars, over a motion made by the plaintiff for a new trial.

The record of the case is voluminous, but the following are believed to be the material facts, as shown by the evidence set out in the bill of exceptions.

It appears that prior to the execution by the defendant to the plaintiff of a note for 1,200 dollars, hereinafter mentioned, the defendant had made the following subscription to the capital stock of the *New Castle and Richmond Railroad Company*, viz:

"We, the undersigned, citizens of *Cass* and *Carroll* counties, promise to pay the sum of 50 dollars to the *New Castle and Richmond Railroad Company* for each share of stock by us hereto subscribed, to be paid as ordered by the Board of Directors of said company, and to be expended in the construction of said company's extension from the town of *Logansport* to the town of *Camden*, in *Carroll* county, as witness our signatures hereto."

"*Adam Porter* takes twenty-four shares, provided the company accepts 160 acres of land lying in *Washington* township, two and one-half miles west of the plank road, in *Carroll* county, on *Paint* creek, 1,200 dollars."

It appears that after the above subscription was made, viz: on the 26th of *February*, 1853, the company changed her name to that of "*The Cincinnati, Logansport and Chicago Railroad Company.*" That afterwards, under the latter name, on

the 31st of *August*, 1854, she consolidated with the *Cincinnati and Chicago Railroad Company* of *Indiana*, and the consolidated company assumed the name of the *Cincinnati and Chicago Railroad Company*. There was a mass of testimony introduced for the purpose of showing that the subscription could not be legally collected by the company in consequence of the above facts; and it was also claimed that the subscription was not collectible because the company had not elected to take the land. The subscription being a proposition merely, and not binding until the company made the election. But the view we take of the case renders it entirely unnecessary to determine whether the defendant was legally bound to pay the subscription or otherwise.

It appears that *A. Rogers & Co.* had a contract for work on the road between *Logansport* and *Camden*, under whom *Millard*, the plaintiff, was a sub-contractor; that there was due to *Millard* 1,600 to 1,700 dollars for work done on that part of the road under his contract; that the agent of the company called on the defendant to get a deed for the land he had subscribed, but he said he believed he would keep the land and pay the money, as he believed the land was worth more than the money. The agent told him the land or the money would be satisfactory. *Porter* wanted to make some arrangement to pay the men who had orders for work on the road, so that he could pay it in payments. The agent told him that *Millard* had an order for 1,600 or 1,700 dollars. Afterwards an arrangement was perfected by which *Porter* gave his note to *Millard* for 1,200 dollars, payable in six months, dated *July* 8, 1854. *Porter's* subscription was credited as paid in full on the books of the company, and receipts given to him therefor by the agent of the company, and *Millard* receipted to the company for the amount, on his work. Afterwards *Porter* made payments on the note, and it was finally taken up and the one in suit given for the balance due.

Millard *v.* Porter.

It was for the payments thus made on the 1,200 dollar note that the defendant recovered upon his counter-claim.

We have not examined the various instructions given and refused, as we are of opinion that the judgment should be reversed upon the evidence.

There is no evidence in the record that establishes fraud in the transaction, and we are of opinion that, on the facts shown, the 1,200 dollar note was given upon a good and sufficient consideration. The acts of the defendant would seem to amount to a waiver of any defence, if he had any, to the subscription, even as between himself and the company, but upon this point we make no decision. The settling and receipting for the claim which the plaintiff held, was a sufficient consideration for the note, even though the subscription could not have been enforced. It is difficult to perceive why the receipting for, and canceling of such indebtedness, is not equivalent so far as furnishing a consideration for the note is concerned, to a payment directly by *Millard*, of the subscription. Had *Millard* paid the subscription directly, at the request of *Porter*, that would have furnished a sufficient consideration, although *Porter* could not have been liable on the subscription. *Vide Wright et at.* v. *Hughes, Nov.* term, 1859.

If the 1,200 dollar note was valid, the one given in lieu of it, and now in suit, is also valid, and the judgment for the defendant on his counter-claim, for what he has paid on it, is not only wrong but he is liable upon the note sued upon.

*Per Curiam.*—The judgment below is reversed with costs, and the cause remanded for a new trial.

*Z. Baird* and *L. B. Simms,* for the appellant.

*Robert Jones, S. A. Huff,* and *Allen & Schermerhorn,* for the appellee.

(1) This cause was decided on *May* 30, 1860, and by accident was not reported in the 14th Indiana, where it should have appeared, and it is therefore inserted here.