JEWETT LUMBER COMPANY, Appellee, v. MARTIN CONROY COMPANY et al., Appellants.

**BILLS AND NOTES:** Construction—Difference in Understanding of
1  **Terms.** The principle ''that when the terms of an agreement have been intended in a different sense by the parties, that sense is to prevail against either party in which he had reason to suppose the other understood it'' (Sec. 4617, Code, 1897) cannot prevail over the plain and definite language of the writing and the equally definite conduct of the parties out of which the writing arose.

**CONTRACTS:** Consideration—Sufficiency—Bills and Notes.  A con-
2  sideration sufficient to support a contract is (a) either a benefit moving to the promisor or (b) a detriment agreed to be suffered by the promisee.

PRINCIPLE APPLIED:  A school district was owing C, its principal contractor, for the erection of a schoolhouse.  C had let part of the work to L, and an action was pending in court between C and L as to the amount, if anything, due L from C. L was owing J for material used in the building and J, claiming he could hold whatever sum was due to L from C, perfected a claim-for a lien on the funds in the hands of the district.  In this condition of conflicting interests, C gave his promissory note to J for the amount L was owing J, and J then released all claim on the fund in the hands of the district, and C received his money from the district.  *Held*, the consideration for the note was ample.

*Appeal from Polk District Court.*—HON. CHARLES A. DUDLEY, Judge.

MONDAY, MAY 10, 1915.

REHEARING DENIED SATURDAY, OCTOBER 2, 1915.

ACTION at law to recover in the first count upon an account, and in the second count upon a note.  Trial to the

court without a jury. Judgment for plaintiff on both the account and the note. Defendants appeal.—*Affirmed.*

John T. Conroy and A. A. McGarry, for appellants.

Frank N. Jacks and Marion B. Seevers, for appellee.

PRESTON, J.—The defendant, Martin Conroy Company, is a partnership, and Martin Conroy and J. C. O'Donnell are the partners. About June 12, 1909, plaintiff and defendant company entered into a verbal contract to furnish lumber and materials for a school building; under such agreement they furnished lumber and other materials as ordered by defendant company and delivered same to defendants at the building. The amount claimed on the account is $284.08, with interest. The second count is upon a note in the following form:

$678.65                    Des Moines, Ia., October 1st 1910.

On or before the First day of March, 1911, for value received, We promise to pay to JEWETT LUMBER COMPANY, or order SIX HUNDRED SEVENTY-EIGHT & 65-100 DOLLARS, At their office in Des Moines, with interest at eight per cent per annum, payable semi-annually:

And interest and principal in arrears shall draw eight per cent till paid; and in case non-payment of interest when due, or any other payments as herein agreed, the whole sum of principal and interest to become due and collectible at the holder's option. If this note is not paid at maturity, the undersigned agree to pay the expense of collection, including attorney's fees. Any justice of the peace shall have jurisdiction in rendering judgment to the amount of three hundred dollars. Makers and endorsers waive demand, notice and protest. This note is given for lumber used in the improvements and if the case of *Lair & Kirkendall vs. Martin Conroy Co.* now pending in the district court of Polk county, Ia. is not settled or tried in said court by the time this note be-

comes due, we Jewett Lumber Co. agree to extend the time until said suit is determined, said extension in no event to exceed one year.    Recovery on this note is not dependent upon the outcome of said suit.

(Signed)    MARTIN CONROY CO.

*Per M. Conroy.*

P. O. Not transferable

The trial court made findings as follows:

1st. I find as a fact that prior to the sale of material by the plaintiff to the defendants to be used by them in the construction of the Hubbell School building for the Independent School District of Des Moines plaintiff had furnished the defendants with a quotation or price list for certain material to be used by the defendants.

2nd. I further find that the material charged in Exhibit A is not in accordance in all particulars with this price list. That it should be figured in accordance with said price list and computing the material set forth in Exhibit 1 as the price list shown the amount had for material in Count I of the petition is $249.71 on which plaintiff is entitled to interest at 6% from the 1st day of July, 1912, to this date making an aggregate due from defendant to plaintiff upon Count I of $269.97.

3rd. I further find that the defendants had a contract with the Independent School District of Des Moines, to erect and furnish the material there for two school buildings, named the Oakland and the Hubbell school buildings and that Lair and Kirkendall entered into a contract with the defendants to plaster and furnish the material for the plastering of said buildings, that the contract price for said plastering of the Hubbell school building between Lair and Kirkendall and the defendants was $2472 and for the Oakland school building the contract price was $1253.

4th. I further find that including the payment of $600.00 the defendants by Lair and Kirkendall on account of the

Hubbell school building the sum of $2465.75 and on account of the Oakland schoolhouse $139.43. These payments exaggerated by reason of extras something more than the contract price for the plastering of said buildings.

5th. I further find that the defendant knew that the plaintiff was furnishing material to Lair and Kirkendall for plastering both of said school buildings and also had knowledge of that fact at the time of the payment of $600.00 in June, 1910.

6th. I further find that the plaintiff within thirty days after the furnishing of the last material for the said Hubbell school building gave notice to the Independent School District of its claim for material furnished to the sub-contractors, Lair and Kirkendall and the defendants as by statute required.

7th. I further find that some time prior to October 1st, 1910, the plaintiff was making efforts to secure money from the defendants on account of material sold to Lair and Kirkendall. That there were efforts made on or about said date to obtain a settlement or satisfaction between Lair and Kirkendall and the defendants and that prior to this date a note was made for the above amount and offered to the plaintiff, containing a condition that the amount of the note should be subject to the outcome of the suit of Lair & Kirkendall vs. the defendants. But the plaintiff declined to accept said note and would only accept the note set out and described in Count II of the petition.

8th. I further find said note being paid at maturity, the defendants have had the benefit of the extension of more than one year for the payment of said note.

9th. I further find that at the time the note was given October the 1st, 1910, that Lair & Kirkendall for material furnished for plastering the Hubbell school building was indebted to the plaintiff in the sum mentioned in said note to wit, $678.65.

10th. I further find that at the time the $600.00 payment

was made to wit June the 9th, 1910, the firm of Lair & Kirkendall was indebted to the plaintiff upon two counts. One for material furnished for the erection of the Oakland school building and one for material furnished for the erection of the Hubbell building and that there was nothing said about the application of the payment of the said $600.00 and that said $600.00 was applied by plaintiff so far as necessary to pay the claim of Lair & Kirkendall to plaintiff for material furnished for the Oakland school building and the balance applied to discharge the claim for material furnished for the Hubbell school building and that after making such application the balance remaining unpaid offered Lair & Kirkendall to plaintiff on the Hubbell school building was said sum of $678.65.

11th. I further find that the firm of Lair & Kirkendall was largely indebted to the plaintiff on other accounts and for material furnished for purposes other than to erect the two said school buildings.

12th. I further find that the only condition attached to said note and the giving thereof is the one which is mentioned in the note itself. And that the right to recover upon this note does not depend upon the out come of the suit of Lair & Kirkendall against the defendants, No. 19470 Law.

13th. I further find that there was no settlement between Lair and Kirkendall and the defendants wanted the check for $600.00 was given by defendants to plaintiff on account of Lair and Kirkendall.

14th. I further find that there is as between Lair & Kirkendall and the defendants an unsettled claim for extras furnished by Lair and Kirkendall for the plastering of the two buildings above mentioned, but the conclusion in this case shall not be an adjudication of any matters pending between said Lair and Kirkendall and the defendants.

15th. I further find that the payment by the defendants to Lair and Kirkendall of the contract price for the plastering and material furnished for said two school buildings is not a discharge or payment of the liability of defendants for

the material furnished by the plaintiff to said Lair & Kirkendall for the construction of said buildings.

As a conclusion of law the plaintiff is entitled to recover from the defendants upon Count I the sum of $269.97 with interest at 6% from this date and upon Count II the sum of $845.50 with interest at 8% from this date and attorney's fees and costs.

Judgment was entered in accordance with the findings.

1. Plaintiff furnished defendants a large amount of lumber and building material, amounting to several thousand dollars, and defendants made a number of payments, from time to time. Plaintiff had furnished defendants with a special price list, which appears in the abstract.

As to Count 1, the issue involved is a matter of computation; that is, to what extent, if at all, does plaintiff's account differ from the price list furnished defendants? Appellants' assignment of error is that the court erred in the amount found due the plaintiff on the first count. Many pages of the abstract and arguments are taken up with the account, one line of which is like this:

| No. | Date | Item | Feet | Price | Amount |
|-----|------|------|------|-------|--------|
| 27 | Dec. 2 | 22 5x10-14 | 1283 | 29.00 | 38.21 |

We are asked to go through the account and the evidence and make computations. The items are not all disputed. Many are. We have compared the disputed items with the special price list and are convinced that the conclusion reached by the trial court is correct.

2. The assignment of error as to the second count is that the court erred in finding that there was any consideration for the note in suit. It is said by appellants that there is a claim that plaintiff had a lien on the building for material, lumber and cement furnished to Kirkendall & Lair, and that no lien is given either by statute or law, citing Code Sec. 3102, and cases. That all the plaintiff, under its lien, Exhibit "C,"

could do was to hold such amount as was due Lair & Kirkendall from Martin Conroy & Company, and that Mr. Lair testifies that he was paid all of the contract price,—that is, the contract he had with Martin Conroy & Company; that therefore there was nothing due and there could be nothing due from Conroy & Company to Lair & Kirkendall; and that if this is so, they ask what was due for which the note was given.  The testimony of Mr. Lair referred to is as follows:

"I have been paid over the contract price as far as the contract price.  I had received over the contract price when I received the $600.00 from Martin Conroy Company.  We had a dispute about the $338.00 due, the time we were trying to settle.  We tried to make a final settlement of the extras and did not come to an agreement."

But Mr. Lair also testified that there is still money due his company on this job, that there were some extras, and that there is due for extras a balance of $1,170 or $1,180.

1. BILLS AND NOTES: construction: difference in understanding of terms. They also cite Code Sec. 4617 as bearing upon this question, which provides that when the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it, and claim that defendant intended this note to be only in the nature of collateral security for the amount due Lair & Kirkendall from defendants.  The testimony shows that plaintiff refused to accept the note unless it expressly stated that it was not dependent upon the outcome of the case of Lair & Kirkendall v. Martin Conroy Company.  A prior note was made, which plaintiff refused to accept.  After the first note was refused, this one was given.  It was executed and delivered by Martin Conroy in the presence and with the approval of his attorney. As before shown, the lower court found that the only condition attached to the note and the giving thereof is the one mentioned in the note itself, and that plaintiff's right to

recover does not depend upon the outcome of the suit of Lair & Kirkendall v. Conroy. We think that, under the evidence and the record, the trial court correctly construed the provisions of the note.

3. We are also of opinion that there was a valid and sufficient consideration for the note. The argument of appellants is that want of consideration may be shown as between the parties, and they cite Sec. 3070 of the Code and the decisions cited under that section. They say "this is so plain a proposition that we need not pursue it further; that by this law it is conclusively shown that Lair & Kirkendall did not owe anything on the contract price; that they did not directly or indirectly agree to pay for the extras. Then, not owing anything to Lair & Kirkendall on the contract price, the note was without consideration, as there was nothing on which to base the note."

2. CONTRACTS: consideration: sufficiency: bills and notes.

But the record shows that by agreement plaintiff released the claim it had filed with the school district, and defendants gave plaintiff the note in question. A definition for consideration is that it is either a benefit moving to the promisor or a detriment agreed to be suffered by the promisee. *Kinkead v. Peet,* 136 Iowa 590, 595.

Both are present here. Defendants obtained the release of plaintiff's claim and received their money from the school district; plaintiff released his claim and relinquished all claims of receiving payment from the school district. Plaintiff gave up its right of litigating the questions of law and fact as to the effect of its claim.

In *Brown v. Jennett,* 130 Iowa 311, 312, we said:

"We think there are two answers to the contention for appellant that his agreement to pay the firm of H. L. Craven & Co. the sum of one hundred and fifty dollars was without consideration. In the first place, he entered into the arrangement with the understanding that the obligation of

Solid to the firm for a commission should be released by the firm and defendant's obligation substituted therefor. It is plain that, if the firm undertook to release Solid and accept defendant as their debtor for the amount of the commission, the firm incurred a detriment which would support defendant's agreement. *Whitesell v. Heiney,* 58 Ind. 108; *Millard v. Porter,* 18 Ind. 503; *Smith v. Finch,* 3 Ill. 321; *Flanagan v. Hutchinson,* 47 Mo. 237; *Smith v. Mayo,* 1 Allen (Mass.) 160. In the second place, the agreement of Solid, through plaintiff as his agent, that the contract between him, and defendant, whether valid or not, should be canceled and discharged, so that no further controversy could arise under it, was sufficient consideration for defendant's agreement to pay to H. L. Craven & Co. the obligation of Solid to them for the commission. If the agreement had been that Solid should relinquish the written instrument executed by him and defendant on Sunday, the consideration for defendant's promise would have been sufficient, although the contract evidenced by such instrument was not valid and enforceable. *Brooks v. Haigh,* 10 Ad. & El. 323. It is not necessary that the consideration be a thing of pecuniary value or reducible to such value. *Bainbridge v. Firmstone,* 8 Ad. & El. 743; 9 Cyc. 315; Wald's Pollock on Contracts, (3d Ed., by Williston) 193; Langdell, Contracts, Sec. 54. And the relinquishment by Solid of his right to litigate the question of law or fact as to defendant's liability under the contract of purchase was likewise a valid consideration. *Miles v. New Zealand, Alford Estate Co.,* (1885-86) 32 Ch. Div. 266; Wald's Pollock on Contracts, (3d Ed.) 214. And see *Richardson & Boynton Co. v. Independent District,* 70 Iowa 573; *Leach v. Keach,* 7 Iowa 232.''

This language is quite in point. Lair & Kirkendall owed plaintiff money for materials used in the Hubbell and Oakland schools. Lair & Kirkendall were subcontractors in the erection of those buildings; the school district owed money to

defendants on said buildings; and plaintiff had filed a claim against the school district under Sec. 3102 of the Code. The one question of fact is involved whether defendants owed money to Lair & Kirkendall for work on these buildings. As before stated, Mr. Lair testified that defendants owed him a balance of $1,170 or $1,180, and prior to the making of the note, Lair & Kirkendall sued defendants for this amount, and this suit was pending at the time the note was given, also at the time of the trial below. If defendants owed Lair & Kirkendall anything on the buildings, plaintiff would have the right to insist on payment of the claim by the school district out of the money the district owed defendants. The question of defendants' liability to Lair & Kirkendall was not only in dispute, but actually in litigation. If Lair & Kirkendall should win their suit, plaintiff would be entitled to receive the amount of its claim from the school district, and it relinquished that right. Doubtful questions of fact arising from a conflict in the evidence are controlled by the findings of the trial court, the action being at law, and such findings have the force of the verdict of a jury.

Our conclusion is that the judgment of the trial court was right, and it is therefore—*Affirmed.*

DEEMER, C. J., WEAVER and EVANS, JJ., concur.